FOSTER, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 17—December 11, 1923.*

*Criminal law: Abortion: Homicide: Criminal miscarriage.*

1. One who operated on a woman after six or eight weeks of pregnancy, resulting in premature expulsion of the fœtus, should have been prosecuted under sec. 4583, Stats. 1921, which punishes such operations with intent to procure miscarriage as an offense against chastity, morality, and decency, rather than under sec. 4352, which punishes such operations with intent to destroy a child as second-degree manslaughter, since homicide is the killing of a human being, and a two-months embryo is not in law a human being.   p. 302.

2. The law in its classifications cannot follow the latest or ultimate classifications of science, but must proceed upon every-day conceptions, especially as to definitions of crimes that are *malum in se*.   p. 302.

ERROR to review a judgment of the municipal court of Racine county: E. R. BURGESS, Judge. *Reversed.*

Plaintiff in error, hereinafter called the defendant, was prosecuted under the provisions of sec. 4352, Stats., and convicted of having feloniously produced the death of the child of one Anna Jung. The evidence showed among other things that Miss Jung was advanced in pregnancy from six to eight weeks; that she consulted the defendant; that he made an examination and pronounced her pregnant, and

performed a criminal operation upon her resulting in a pre-
mature expulsion of the fœtus.   He claimed the evidence
fails to show that Miss Jung was pregnant; that there is not
sufficient proof of his having performed an operation; and
that if guilty at all he should have been prosecuted under
the provisions of sec. 4583, Stats., relating to producing
a miscarriage.   To test the correctness of his claims he
sued out a writ of error.

For the plaintiff in error there was a brief by *Whaley &*
*Erikson* of Racine, and oral argument by *Vilas H. Whaley*
and *C. E. Erikson.*

For the defendant in error there was a brief by the
*Attorney General, J. E. Messerschmidt,* assistant attorney
general, and *G. E. Smalley,* assistant district attorney of
Racine county, and oral argument by *Mr. Smalley* and *Mr.*
*Messerschmidt.*

VINJE, C. J.   We shall not devote any time to the dis-
cussion or recital of the evidence further than to say that it
sustains a finding that Miss Jung was pregnant; that the
defendant performed a criminal operation upon her by
means of which the embryo or fœtus was prematurely ex-
pelled; and that there were no prejudicial errors in the trial
of the case.

The really serious question in the case is whether the
defendant was prosecuted under the proper section of the
statute.   Sec. 4352, under which he was prosecuted, reads
as follows:

"Any person who shall administer to any woman preg-
nant with a child any medicine, drug or substance whatever,
or shall use or employ any instrument or other means with
intent thereby to destroy such child, unless the same shall
have been necessary to preserve the life of such mother or
shall have been advised by two physicians to be necessary
for such purpose, shall, in case the death of such child or of
such mother be thereby produced, be deemed guilty of man-
slaughter in the second degree."

·It is found in the chapter relating to "Offenses against Lives and Persons." The penalty for its violation· is imprisonment in the state prison from 'four to seven years.

Sec. 4583 reads as follows:

"Any person who shall administer to any pregnant woman, or prescribe for such woman, or advise or procure any such woman to take any medicine, drug or substance or thing whatever, or shall use or employ any instrument or other means whatever, or advise or procure the same to be used, with intent thereby to procure the miscarriage of any such woman shall be punished by imprisonment in the county jail not more than one year nor less than six months or by fine not exceeding five hundred dollars nor less than two hundred and fifty dollars, or by both such fine and imprisonment in the discretion of the court."

It is found in the chapter entitled "Offenses against Chastity, Morality, and Decency." It is evident that the legislature did not intend to define the same offense in the two sections. In the latter it defines the offense of an act intended to produce miscarriage or one that does produce miscarriage. *Rodermund v. State,* 167 Wis. 577, 168 N. W. 390. In order to commit such an offense there must be a pregnant woman. A normal pregnancy can exist only where there is embryonic life in the womb of the pregnant woman; therefore, in order to commit the offense of producing a miscarriage, there must be a destruction and expulsion of embryonic life. So we have a statute covering the offense of destroying and expelling from the womb embryonic life. This offense is one not against a person because the law does not recognize a mere embryo as a person or human being, but is an offense against morality because it is against good morals to destroy that which otherwise presumably would develop into a human being. It interferes with the normal functions of nature in the perpetuation of the race.

The offense described in sec. 4352 constitutes manslaughter in the second degree and is by statute included under the denomination of "homicide," which means the killing

of a human being.  Sec. 4347, Stats.; 13 Ruling Case Law,
734; 29 Corp. Jur. 1049.  Neither in popular nor in scientific
language is the embryo in its early stages called a human
being.  Popularly it is regarded as such, for some purposes,
only after it has become "quick," which does not occur till
four or five months of pregnancy have elapsed.  In contem-
plation of law, says Blackstone, life begins as soon 'as an
infant is able to stir in its mother's womb.  1 Bl. Comm.
p. 129.  To the same effect is the ruling in *State v. Cooper,*
22 N. J. Law, 52, 51 Am. Dec. 248.  It is obvious that no
death of a child can be produced where there is no living
child.  Sec. 4352 requires the existence of a living child and
the causing of its death, or that of the mother, before the
offense there defined is committed.  If pregnancy has not
advanced sufficiently so that there is a living child, that is,
a *quick* child, then felonious destruction of the fœtus con-
stitutes a criminal miscarriage only.  This construction gives
full force and effect to each section as defining a distinct
separate. offense, is in àccordance with the common con-
ception of the beginning of life, and is sustained by au-
thority.  *Evans v. People,* 49 N. Y. 86; *Sullivan v. State,*
121 Ga. 183, 48 S. E. 949; *Barrow v. State,* 121 Ga. 187,
48 S. E. 950; *State v. Cooper,* 22 N. J. Law, 52; 29 Corp.
Jur. 1050; 1 Russell, Crimes (8th Am. ed.) 672; Wharton,
Homicide (3d ed.) p. 591; 21 Cyc. 662.

In *State v. Dickinson,* 41 Wis. 299, the court had before
it a case where the death of the pregnant mother was pro-
duced, and the statement that "it is not material whether the
pregnant woman be *quick* with child or not," was correct
under the facts there existing.  Some authorities hold that
a woman is *quick* with child from the time of conception
but does not carry a *quick* child until it has stirred in the
mother's womb.  For a case seeming to hold a contrary
view to that held in this case see *State v. Atwood,* 54 Oreg.
526, 102 Pac. 295, 104 Pac. 195.

In a strictly scientific and physiological sense there is life

in an embryo from the time of conception, and in such sense there is also life in the male and female elements that unite to form the embryo. But law, for obvious reasons, cannot in its classifications follow the latest or ultimate declarations of science. It must for purposes of practical efficiency proceed upon more every-day and popular conceptions, especially as to definitions of crimes that are *malum in se*. These must be of such a nature that the ordinary normal adult knows it is morally wrong to commit them. That it should be less of an offense to destroy an embryo in a stage where human life in its common acceptance has not yet begun than to destroy a *quick* child, is a conclusion that commends itself to most men. The legislature saw fit to enact sec. 4583, a law making it an offense to produce a criminal miscarriage. It also made it a graver offense by sec. 4352 to produce a criminal abortion resulting in the death of a quick child or of its mother. Both the quick child and the mother are human beings—hence to unlawfully kill either constitutes manslaughter. A two months' embryo is not a human being in the eye of the law and therefore its destruction constitutes an offense against morality and not against lives and persons. Defendant should have been prosecuted under the provisions of sec. 4583. The evidence does not sustain a conviction under sec. 4352.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.