## STATE v. MRS. GENE CAMPBELL.

(Filed 12 January, 1944.)

**1. Statutes §§ 5a, 8—**

> It is not the policy of the criminal law to make a person charged with crime the victim of ambiguities. Statutes levying taxes and statutes creating criminal offenses are subject to strict construction.

**2. Same—**

> Public Laws 1939, ch. 188, is regulatory, involving police power as well as taxing power, and the words, "tourist camp, cabin camp, tourist home, *roadhouse*, public dance hall, or other similar establishment," in sec. 1, are qualified by the words "where travelers, transient guests, or other persons are or may be lodged for pay," so that to convict a person of operating a "roadhouse" and impose the penalties of sec. 13, it must be shown that such person lodged or offered to lodge transient guests.

APPEAL of defendant from *Thompson, J.,* at June Criminal Term, 1943, of DURHAM.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*
*R. M. Gantt for the defendant, appellant.*

SEAWELL, J. The defendant was tried and convicted in the recorder's court of Durham County upon a warrant charging "that Mrs. Gene Campbell, on or about the 17th day of April, 1943, with force and arms, at and in the County aforesaid, and within Durham County, did wilfully, maliciously and unlawfully Operating a road house without securing a proper license as is required by law against the statute in such cases made and provided, and against the peace and dignity of the State."

Upon her appeal to the Superior Court of Durham County, where the case was tried *de novo,* she was again convicted, and from the sentence appealed to this Court. Only her exception to the ruling of the court below overruling her demurrer to the evidence and motion for judgment as of nonsuit is involved in the appeal. The question presented is primarily one of statutory construction of certain sections of chapter 188, Public Laws of 1939, which the State contends are applicable to the business shown to have been conducted by defendant, and which the defendant insists should be otherwise construed.

Section 1 of the Act cited reads as follows:

"Every person, firm or corporation engaged in the business of operating outside the corporate limits of any city or town in this State a tourist camp, cabin camp, tourist home, road house, public dance hall, or any other similar establishment by whatever name called, where

travelers, transient guests, or other persons are or may be lodged for pay or compensation, shall, before engaging in such business, apply for and obtain from the Board of County Commissioners of the county in which such business is to be carried on a license for the privilege of engaging in such business and shall pay for such license an annual tax in the amount of two dollars ($2.00)."

Section 13, having reference to this business, reads as follows:

"It shall be unlawful for any person, firm or corporation to engage in such business without first obtaining a license therefor. Any person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be fined or imprisoned in the discretion of the court."

It is admitted that defendant did not have a license under the provisions of this statute. The only question is whether the activities in which she was actually engaged bring her within the description of the business upon which the statute imposes a tax and for which it requires a license.

The facts upon which the conviction rests are substantially as follows:

Defendant has a home on the Oxford-Durham Highway, with seven or eight rooms on the second floor, where she has some roomers and boarders. She also feeds people—runs a sort of lunch counter and sells bottled drinks, candies and sandwiches. On the first floor she has a room which contains a lunch counter which extends about one-half the length of the room, entered by a door facing towards the highway. Back of the lunch counter and in front of the room are two booths with a table in each, seating around four people. North of the booths is an open, clear space about 20 feet long and 8 or 10 feet wide. In the room where the lunch counter is located, there is a music box, operated by putting a coin in the slot. On two occasions, the officers testified, they saw some dancing—at one time just one couple and at another two or three couples —probably two soldiers dancing with two girls and a civilian with another girl—"that sort of dancing might have taken place at any other place where food was served, at a filling station or anyone's home." There was not room for more than three or four couples to dance, and the people the officers saw dancing looked crowded.

There was no evidence that defendant had ever lodged or offered to lodge transient guests.

The State contends that the term "roadhouse" is a term very generally understood in common parlance, and must be understood in its popular meaning, citing U. S. v. Boasberg, 283 Fed., 305, 306 (E. D. La., 1922): "The phrase 'roadhouse' has a well known meaning, indicating a certain kind of restaurant."; and quoting the definition given in 54 C. J., p. 849: "ROADHOUSE. A certain kind of restaurant." The defendant contends,

however, that the term is further modified and described in the statute, and that the definition thus given has become the dictionary of the law. After naming, in parallel construction, "tourist camp, cabin camp, tourist home, *road house,* public dance hall, or any other similar establishment by whatever name called," there is added the qualification "where travelers, transient guests, or other persons are or may be lodged for pay or compensation." The defendant contends that this phrase is an essential part of the description of a "road house" to which the statute applies. Without attempting to too nicely balance the reasonings *pro* and *con,* we believe the grammatical construction and syntax of the section, and particularly the punctuation by which the modifying clause is set off— often as necessary to the spelling of the sentence as letters are to the spelling of the words—are more favorable to the view taken by counsel for the defendant and should be adopted as the construction intended.

We are also inclined to that view because we can see no economic or social policy reasonably requiring a distinction between a roadhouse and "other similar place" with respect to the particular qualification added. Moreover, a perusal of the whole chapter (Public Laws of 1939, ch. 188) convinces us that the law is regulatory, involving the police power as well as the taxing power of the State. In fact, section 6 requires persons occupying any room at the roadhouse to register, and if traveling by motor vehicle, to register the license tag of the motor vehicle; and section 7 provides for the punishment for any man or woman found occupying the same room in any establishment within the meaning of the Act for any immoral purpose, or for falsely registering as husband and wife. It seems reasonably clear, upon an inspection of the whole Act, that it was aimed at establishments where transient lodgings might be had by tourists and travelers.

It might be conceded that the question is debatable, but it is not the policy of the criminal law to make a person charged with crime the victim of ambiguities. Statutes levying taxes and statutes creating criminal offenses are subject to strict construction. *S. v. Crawford,* 198 N. C., 522, 152 S. E., 504; *S. v. Heath,* 199 N. C., 135, 153 S. E., 855; 87 A. L. R., 37; *S. v. Briggs,* 203 N. C., 158, 165 S. E., 339; *Commonwealth v. Lorrilard Co.,* 136 Va., 258; *Columbia Gas Light Co. v. Mobley,* 137 S. C., 107, 137 S. E., 211; *Fuller v. S. C. Tax Com.,* 128 S. C., 14, 121 S. E., 478.

The motion of defendant for judgment of nonsuit should have been allowed. The judgment to the contrary is

Reversed.