STATE v. EDWARD GREEN.

(Filed 4 May, 1949.)

**1. Abortion § 10—**

Where, in a prosecution upon a warrant charging that defendant feloniously advised a woman pregnant with child to take certain medicines with intent to destroy such child, G.S. 14-44, the evidence tends to show that the acts of defendant were committed prior to the time the child was quick, nonsuit for fatal variance between the indictment and proof should have been allowed.

**2. Abortion §§ 2, 4—**

The offenses proscribed by G.S. 14-44 and G.S. 14-45 are separate and distinct: G.S. 14-44 relates to the destruction of the child, which must be quick before it has independent life, and G.S. 14-45 relates to the miscarriage of, or injury to, or destruction of the woman.

SEAWELL, J., dissents.

APPEAL by defendant from *Pless, Jr., J.,* at 29 Nevember Term, 1948, of CALDWELL.

Criminal prosecution upon indictment found as a true bill at a regular term of Superior Court convening on 29 November, 1948, charging that "Edward Green late of the County of Caldwell on the 25th day of August in the year of our Lord one thousand nine hundred and forty eight, with force and arms, at and in the county aforesaid, did unlawfully, willfully and feloniously advise and procure one Sybil Winkler, a female person, who was pregnant with child, to take certain medicine, drug or other substance with intent thereby to destroy such child, same not being necessary to preserve the life of the said Sybil Winkler against the form of the statute," etc.

Defendant, upon arraignment, pleaded not guilty.

Upon the trial in Superior Court, the State offered Sybil Winkler as a witness. Her testimony may be summarized as follows: That defendant started going with her in May, 1948, and she became pregnant by him on June 14th; that she told defendant of her pregnancy, and he told her that

he would get for her something to get rid of the child; that at that time she had passed two or three periods; that he brought to her some medicine, quinine capsules, twice, 12 at a time, from a drug store; that she took all but two; that then defendant took her in his car to a doctor in Lenoir for shots, and said that would get rid of it; that she was given some kind of black pills, 12 in a box; that the doctor gave her a shot in the arm with a hypodermic needle; that she went back to the doctor and he gave her another shot; that after she had taken the medicine and the shots, defendant did not advise her "any further about how to get rid of the baby"; but that he took her to another doctor in Hickory for an operation and went into the doctor's office with her; that the doctor did not operate,—said she "was too far gone"; that this was about two weeks after she went to the doctor in Lenoir; and that the last time she went to the doctor was in October.

And this witness further testified that June 14th was the correct date "of her pregnancy"; that she first felt the movement of the child in her body at four months; that the doctor told her that is "when you are supposed to feel the movement"; that that was after 25 August, 1948, and about two and a half months before the time she was testifying; and that she was then six months pregnant.

And the State offered testimony of other witnesses tending to corroborate that given by Sybil Winkler.

Verdict: Guilty.

Judgment: That defendant be imprisoned in the State Penitentiary at hard labor for not less than two nor more than three years.

Defendant appeals therefrom to Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and John R. Jordon, Jr., Member of Staff, for the State.*

*W. H. Strickland for defendant, appellant.*

WINBORNE, J. Appellant's exception to the denial of his motion for judgment as in case of nonsuit at the close of all the evidence is well taken, for that there is a fatal variance between the offense charged in the bill under which defendant stands indicted, and the proof offered. *S. v. Forte,* 222 N.C. 537, 23 S.E. 2d 842, and cases cited. See also *S. v. Jordon,* 227 N.C. 579, 42 S.E. 2d 674. These decisions were by unanimous Court.

The bill of indictment against defendant is framed in accordance with the provisions of G.S. 14-44, formerly C.S. 4226, that is, that defendant advised and procured a certain female person, who was pregnant with child, to take certain medicine, drug or other substance "with intent

thereby to destroy such child," etc. But the proof, taken in light most favorable to the State, fails to show that at the time defendant so advised and procured the woman to take the medicine, drug or other substance, she was "pregnant or quick with child" within the meaning of G.S. 14-44, as interpreted by this Court in *S. v. Forte, supra,* and *S. v. Jordon, supra,* which is an essential element in the offense to which G.S. 14-44 relates.

Adverting to the decisions in those cases, it is seen that in this State there are two statutes pertaining to abortion, G.S. 14-44, formerly C.S. 4226, and G.S. 14-45, formerly C.S. 4227. The distinction between the offenses to which these two statutes relate is pointed out in this manner: In pertinent part G.S. 14-44, formerly C.S. 4226, makes it unlawful for any person to administer drugs to a woman "either pregnant or quick with child . . . with intent thereby to destroy such child" when it is not necessary to do so to preserve the life of the mother. On the other hand, in pertinent part G.S. 14-45, formerly C.S. 4227, makes it unlawful for any person to advise and procure a pregnant woman to take medicine "with intent thereby to procure the miscarriage of . . . or to injure or destroy such woman." That is, the first G.S. 14-44, formerly C.S. 4226, relates to the destruction of the child, and the second, G.S. 14-45, formerly C.S. 4227, to the miscarriage of, or to the injury or destruction of the woman,—manifestly two separate and distinct offenses.

Moreover, as to how far the pregnancy shall have advanced before the child is capable of being destroyed, it is held in *S. v. Forte, supra,* that the general rule is that the child with which the woman is pregnant must be so far advanced as to be regarded in law as having a separate existence, —a life capable of being destroyed. "Life" as stated by Blackstone, "begins in contemplation of law as soon as an infant is able to stir in the mother's womb." 1 Bl. Com. 129. This ordinarily does not occur until four or five months of pregnancy have elapsed. If pregnancy has not advanced sufficiently so that there is a living child, that is, a quick child, then the felonious destruction of the fetus would not constitute a destruction of the child. Indeed, in *S. v. Jordon, supra,* it is said that the words "pregnant or quick with child" as used in G.S. 14-44 means "pregnant, *i.e.* quick with child" or "pregnant with child that is quick."

Applying these principles to the case in hand, the evidence shown in the record on this appeal, taken in the light most favorable to the State, fails to show that at the time defendant advised and procured medicine for the pregnant woman to take, and at the time he took her to the doctor in Lenoir where she was given medicine and shots with hypodermic needle, her pregnancy had advanced to that stage when the child is capable of being destroyed. In this connection the visit to the doctor in Hickory is not of probative value since the purpose of it was in vain.

Hence, the evidence fails to make out a case for the jury on the charge contained in the present bill of indictment.

The judgment below is

Reversed.

SEAWELL, J., dissents.