STATE OF NORTH CAROLINA v. DONALD RAY BEALE, JR.

No. 64PA88

(Filed 9 February 1989)

**Homicide § 1— killing of unborn child not murder**
 The unlawful, willful and felonious killing of a viable but unborn child is not murder within the meaning of N.C.G.S. § 14-17.

ON grant of defendant's petition for certiorari to review an order entered by *Ellis, J.,* at the 16 November 1987 Criminal Session of Superior Court, CUMBERLAND County, denying defendant's motion to dismiss an indictment charging him with murder of an unborn child. Heard in the Supreme Court 14 December 1988.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

State v. Beale

FRYE, Justice.

On 2 February 1987, the grand jury of Cumberland County returned a true bill on a two-count indictment charging that defendant, on 17 December 1986, 1) "unlawfully, willfully and feloniously did of malice aforethought kill and murder Donna Faye West Beale, in violation of North Carolina General Statutes Section 14-17"; and 2) "unlawfully, willfully and feloniously did employ an instrument, a 410 shotgun, on Donna Faye West Beale, a pregnant woman, by firing the 410 shotgun with intent to destroy the unborn child, in violation of North Carolina General Statutes Section 14-44." On 31 August 1987, the grand jury returned a superseding indictment, again with two counts. The first count, as before, charged defendant with the murder of Donna Faye West Beale. The second count charged that defendant "unlawfully, willfully and feloniously did of malice aforethought kill and murder Baby Girl Beale, a human being, a viable but unborn child, in violation of North Carolina General Statutes Section 14-17."

Thereafter, defendant moved, pursuant to N.C.G.S. § 15A-954, to dismiss the second count of the indictment on the ground that the indictment failed to state an offense under North Carolina law. Following a hearing, the court entered an order denying defendant's motion. Defendant's petition for certiorari was allowed by this Court on 6 April 1988.

The question before this Court is whether the trial judge properly denied defendant's motion to dismiss the second count of the indictment. To decide this question we must determine whether the unlawful, willful and felonious killing of a viable but unborn child is murder within the meaning of N.C.G.S. § 14-17.[1]

---

1. Murder in the first and second degree defined; punishment.

　　A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing . . . shall be deemed to be murder in the first degree, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life as the court shall determine . . . . All other kinds of murder . . . shall be deemed murder in the second degree, and any person who commits such murder shall be punished as a Class C felon.

N.C.G.S. § 14-17 (1988).

N.C.G.S. § 14-17 classifies murder into two degrees: murder in the first degree, which carries a punishment of death or life imprisonment; and murder in the second degree, a Class C felony.[2] While the statute uses the term "murder," it does not define murder. Prior to the enactment of this statute in 1893, there were no degrees of murder in North Carolina. *State v. Benton*, 276 N.C. 641, 657, 174 S.E. 2d 793, 803 (1970). *See State v. Rhyne*, 124 N.C. 847, 33 S.E. 128 (1899). "Any unlawful killing of a human being with malice aforethought, express or implied, was murder and punishable by death." *State v. Benton*, 276 N.C. at 657, 174 S.E. 2d at 803. The killing of a viable, but unborn child was not considered murder. One who caused the death of an unborn child, either by using or employing on "any woman either pregnant or quick with child . . . any instrument or other means with intent thereby to destroy such child," was guilty of a felony punishable by a fine and up to ten years in prison "unless the same be performed to preserve the life of the mother." 1881 N.C. Sess. Laws ch. 351, § 1; *State v. Jordon*, 227 N.C. 579, 42 S.E. 2d 674 (1947). *See State v. Hoover*, 252 N.C. 133, 113 S.E. 2d 281 (1960); *State v. Green*, 230 N.C. 381, 53 S.E. 2d 285 (1949). This statute, codified as N.C.G.S. § 14-44, was amended in 1967 and again in 1979 when the punishment was changed to that of a Class H felony. 1967 N.C. Sess. Laws ch. 367; 1979 N.C. Sess. Laws ch. 760, § 5.

The second count of the superseding indictment in this case charged defendant with murder of a viable but unborn child in violation of N.C.G.S. § 14-17. Murder under N.C.G.S. § 14-17 is murder as defined at common law. *State v. Streeton*, 231 N.C. 301, 305, 56 S.E. 2d 649, 652 (1949). North Carolina has clearly adopted the common law. N.C.G.S. § 4-1 (1988). It is beyond question that when the predecessor statutes to N.C.G.S. § 4-1 and N.C.G.S. § 14-17 were originally enacted in 1715 and 1893 respectively, and when the Declaration of Independence was promulgated in 1776, the killing of a viable, but unborn child was not murder at common law. *See generally, Keeler v. Superior Court*, 2 Cal. 3d 619, 87 Cal. Rptr. 481, 470 P. 2d 617 (1970) (and authorities cited therein).

---

2. A Class C felony is "punishable by imprisonment up to 50 years, or by life imprisonment, or a fine, or both imprisonment and a fine." N.C.G.S. § 14-1.1(a)(3) (1986 & Cum. Supp. 1988).

The State contends that this Court should abandon the common law rule that a viable fetus cannot be the subject of murder unless it was born alive and subsequently died of injuries inflicted prior to birth. The State says this Court has the authority to alter judicially created common law, absent a legislative declaration, when it deems it necessary in light of experience and reason. The State argues that due to advances in medical technology which enable the State to show with certainty the viability and cause of death of an unborn child, this Court should abandon the common law "born alive rule" in favor of a rule which would allow prosecution for murder if the fetus, at the time of the killing, was capable of living apart from the mother without artificial support. Relying on *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E. 2d 489 (1987), the State says that this Court has recognized that a viable, but unborn child is a human being in the context of the Wrongful Death Statute.[3] The State notes that the highest courts of South Carolina, Massachusetts and Wisconsin have determined that a viable fetus is a person for the purposes of a homicide statute. *See State v. Horne*, 282 S.C. 444, 319 S.E. 2d 703 (1984); *Commonwealth v. Cass*, 392 Mass. 799, 467 N.E. 2d 1324 (1984); *Foster v. State*, 182 Wis. 298, 196 N.W. 233 (1923).

We disagree with the State's contentions. Assuming that the problems of proving causation have decreased due to technological advancements, these advancements are not a sound basis for extending the common law definition of murder to encompass a class of persons originally excluded under the common law definition of murder in existence when the legislature enacted N.C.G.S. § 14-17.

The strongest case in support of the State's contentions is *State v. Horne*, 282 S.C. 444, 319 S.E. 2d 703. In that case, the South Carolina Supreme Court reversed a conviction of voluntary manslaughter where the evidence disclosed that defendant stabbed his estranged wife, resulting in the death of an unborn,

---

3. In *DiDonato*, a civil case, this Court held that any uncertainty in the meaning of the word "person" as used in the Wrongful Death Act, N.C.G.S. § 28A-18-2, should be resolved in favor of permitting an action to recover for the destruction of a viable fetus *en ventre sa mere*. The Court reached this conclusion after considering the language of the Wrongful Death Act, its legislative history, and the statute's broadly remedial objectives. *DiDonato v. Wortman*, 320 N.C. 423, 430, 358 S.E. 2d 489, 493.

full-term, viable child the wife was carrying. However, the court, in so doing, held that in the future when the State can prove beyond a reasonable doubt that the fetus was able to live separate and apart from its mother without the aid of artificial support, an action for homicide may be maintained under a South Carolina statute defining murder as "the killing of any person with malice aforethought, either express or implied." *Id.*; S.C. Code Ann. § 16-3-10 (Law. Co-op. 1976). The court refused to apply its decision to the defendant since no previous South Carolina decision "had held that the killing of a viable human being *in utero* could constitute a criminal homicide" and because "[t]he criminal law whether declared by the courts or enacted by the legislature cannot be applied retroactively." *State v. Horne*, 282 S.C. at 447, 319 S.E. 2d at 704.

In *Commonwealth v. Cass*, 392 Mass. 799, 467 N.E. 2d 1324, the Supreme Judicial Court of Massachusetts was called upon to decide whether a viable fetus is a "person" for purposes of that state's vehicular homicide statute. The court, after stating that "[t]he question is one of legislative intent," concluded that "the better rule is that infliction of prenatal injuries resulting in the death of a viable fetus, before or after it is born, is homicide." *Id.* at 800, 807, 467 N.E. 2d 1325, 1329. In reaching its decision, the majority opinion noted that since "at least the fourteenth century, the common law has been that the destruction of a fetus *in utero* is not a homicide" and that "[t]he rule has been accepted as the established common law in every American jurisdiction that has considered the question." *Id.* at 805, 467 N.E. 2d at 1328. In concluding that its decision should not be applicable to the defendant, the court noted that its decision "may have been unforeseeable" and that "the rule that a fetus cannot be the victim of a homicide is the rule in every jurisdiction that has decided the issue, except those in which a different result is dictated by statute." *Id.* at 808-09, 467 N.E. 2d at 1329. The three dissenting justices called the majority decision "an inappropriate 'exercise of raw judicial power.'" *Id.* at 810, 467 N.E. 2d at 1330.

*Foster v. State*, 182 Wis. 298, 196 N.W. 233, involved the question of whether the defendant was prosecuted under the proper statute for performing a criminal operation upon a six to eight week pregnant woman resulting in a premature expulsion of the fetus. Section 4583 of the Wisconsin statutes made it a crime

to produce a criminal miscarriage. Section 4352 provided that a person who employed an instrument or other means with intent to destroy the child of a pregnant woman shall be deemed guilty of manslaughter in the second degree if the death of the child is caused thereby. The court reversed the defendant's conviction under section 4352, holding that a "two months' embryo is not a human being in the eye of the law . . . ." *Id.* at 302, 196 N.W. at 235. In reaching its decision, the court said that the unlawful killing of a "quick" child is manslaughter.

In each case relied upon by the State, the courts had to determine whether the defendant could be prosecuted under the statute in question. The defendant's conviction was not upheld in either of the three cases. Nevertheless, the cases do support the proposition that a person may be prosecuted under a homicide statute for causing the death of a viable fetus. Arrayed against these cases are those from the overwhelming majority of courts which have considered the issue and concluded that the killing of a viable but unborn child is not murder under the common law. *Keeler v. Superior Court*, 2 Cal. 3d 619, 87 Cal. Rptr. 481, 470 P. 2d 617 (1970); *State v. Anonymous*, 40 Conn. Supp. 498, 516 A. 2d 156 (1986); *White v. State*, 238 Ga. 224, 232 S.E. 2d 57 (1977); *People v. Greer*, 79 Ill. 2d 103, 37 Ill. Dec. 313, 402 N.E. 2d 203 (1980); *State v. Trudell*, 243 Kan. 29, 755 P. 2d 511 (1988); *Hollis v. Commonwealth*, 652 S.W. 2d 61 (Ky. 1983); *State v. Brown*, 378 So. 2d 916 (La. 1979); *State v. Evans*, 745 S.W. 2d 880 (Tenn. Crim. App. 1987); *State v. Larsen*, 578 P. 2d 1280 (Utah 1978); *State ex rel. Atkinson v. Wilson*, 332 S.E. 2d 807 (W. Va. 1984). These courts have adhered to the common law rule that the killing of a fetus is not criminal homicide unless it was born alive and subsequently died of injuries inflicted prior to birth. *Id.*

The creation and expansion of criminal offenses is the prerogative of the legislative branch of the government. The legislature has considered the question of intentionally destroying a fetus and determined the punishment therefor. N.C.G.S. § 14-44 (1986). It has adopted legislation dealing generally with the crimes of abortion and kindred offenses. N.C.G.S. §§ 14-44 through 14-46 (1986). It has also created the new offenses of felony and misdemeanor death by vehicle. N.C.G.S. § 20-141.4 (1983 & Cum. Supp.

1988).[4] It has amended N.C.G.S. § 14-44 and N.C.G.S. § 14-17 on more than one occasion. Nothing in any of the statutes or amendments shows a clear legislative intent to change the common law rule that the killing of a viable but unborn child is not murder.

Criminal statutes must be strictly construed. *State v. Smith*, 323 N.C. 439, 444, 373 S.E. 2d 435, 438 (1988); *State v. Brown*, 264 N.C. 191, 141 S.E. 2d 311 (1965); *State v. Campbell*, 223 N.C. 828, 28 S.E. 2d 499 (1944); *State v. Jordon*, 227 N.C. at 580, 42 S.E. 2d at 675.

In view of the action previously taken by the legislature and considering the weight of authority in other jurisdictions on this question, we believe that any extension of the crime of murder under N.C.G.S. § 14-17 is best left to the discretion and wisdom of the legislature. The General Assembly has determined that the intentional destruction of a fetus may constitute a crime punishable as a Class H felony. We do not discern any legislative intent to include the act of killing a viable fetus within the murder statute. We conclude that defendant may not be prosecuted under N.C.G.S. § 14-17, as it now exists, for the killing of a viable but unborn child. Thus, defendant's motion to dismiss the second count of the indictment should be allowed.

The order of the trial court denying defendant's motion to dismiss the second count of the indictment is

Reversed.

---

4. A bill creating the crime of feticide and making it "punishable to the same extent as if the defendant's conduct had caused the death of the mother," was introduced in the 1985 Session of the General Assembly but was not enacted into law. H.B. 1276, First Session, May 20, 1985.