**STATE v. BROOM**

[225 N.C. App. 137 (2013)]

STATE OF NORTH CAROLINA
v.
ROBERT THOMPSON BROOM

No. COA12-209

Filed 15 January 2013

**1. Homicide—death of child—mother shot while pregnant—child born alive—first-degree murder**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder where an infant died one month after her mother's shooting necessitated an early delivery. The precedent relied upon by defendant did not involve an infant born alive and, while the child was not directly injured by the shooting, there was expert medical testimony that the early delivery was required by the shooting and was a cause of the child's necrotizing enterocolitis, the direct cause of death.

**2. Homicide—premeditation and deliberation—shooting of pregnant woman—child born alive**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder where defendant challenged the evidence of premeditation and deliberation. Defendant's shooting of his pregnant wife led to the early delivery of the victim, who died after one month of life from complications of the early delivery. Defendant's statements and actions were sufficient to allow reasonable minds to conclude that he acted with premeditation and deliberation when he shot his wife.

**3. Appeal and Error—grounds for appeal—felony murder—no error in first-degree premeditated murder**

The issue of whether felony murder with kidnapping as the predicate felony should have been dismissed at trial was not reached where the appellate court concluded that there had been no error in the denial of defendant's motion to dismiss first-degree murder based on premeditation and deliberation.

**4. Appeal and Error—grounds for appeal—prayer for judgment continued—no final judgment**

An appeal from a kidnapping conviction was not reached where the trial court entered a prayer for judgment continued without imposing any conditions, so that there was no final judgment on the charge.

**5. Homicide—attempted first-degree murder—intent to kill— substantial evidence**

When viewed in the light most favorable to the State, there was substantial evidence from which the jury could conclude that defendant shot his wife (Danna) with the specific intent to kill and the trial court did not err in denying defendant's motion to dismiss the charge of attempted first-degree murder. The State presented evidence that defendant removed Danna's cell phone from her reach, left the room, returned with a .45 caliber pistol, and shot her in the abdomen with a hollow point bullet. Defendant then denied Danna medical assistance for approximately twelve hours.

**6. Jury—selection—questioning limited—no abuse of discretion or prejudice**

There was no abuse of discretion or prejudice in a prosecution arising from the shooting of defendant's pregnant wife and the early delivery and subsequent death of the baby where the trial court limited defendant's voir dire questioning about when life begins and the death of a baby. The trial court sustained the State's objection to questioning that was confusing and not relevant.

**7. Jury—requested preselection instruction—denied—proper instruction given**

There was no abuse of discretion in the trial court's denial of defendant's request for a preselection jury instruction regarding the killing of an unborn child in a first-degree murder prosecution arising from the shooting of the child's mother. Defendant failed to include the requested instruction in the record; moreover, the trial court properly instructed the jury.

**8. Homicide—first-degree murder—request for instruction on second-degree murder—premeditation and deliberation not negated**

The trial court did not err by denying defendant's request for an instruction on second-degree murder where defendant did not provide evidence negating premeditation and deliberation other than his denial that he committed the offense.

**9. Constitutional Law—double jeopardy—prayer for judgment continued**

There was no double jeopardy violation for convictions of attempted first-degree murder and assault with a deadly weapon

**STATE v. BROOM**

[225 N.C. App. 137 (2013)]

with intent to kill inflicting serious bodily injury where an unconditional prayer for judgment continued was entered on the latter conviction.

Appeal by defendant from judgments entered 13 October 2010 by Judge J.B. Allen, Jr. in Alamance County Superior Court. Heard in the Court of Appeals on 10 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

HUNTER, Robert C., Judge.

Robert Thompson Broom ("defendant") appeals from the judgments entered after the jury· found him guilty of first-degree murder of his daughter, as well as the attempted first-degree murder and first-degree kidnapping of his wife, and assault with a deadly weapon with intent to kill inflicting serious injury on his wife. On appeal, defendant argues that the trial court erred in: denying his motion to dismiss the charges of first-degree murder, felony murder, kidnapping, and attempted first-degree murder; limiting his *voir dire* of prospective jurors; denying his request for a jury instruction prior to *voir dire* of prospective jurors; denying his request for an instruction on second-degree murder; and allowing the jury to return separate verdicts of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury for the same underlying actions. After careful review, we find no error.

## Background

The State's evidence tended to establish the following facts. Defendant and Danna Broom ("Danna") married in 2001 and, in 2003, Danna gave birth to their first child. In May 2008, Danna learned that she was pregnant with the couple's second child. By that time, however, defendant was having an extramarital affair and was considering leaving his wife. When Danna told defendant of her pregnancy, defendant became angry and suggested that Danna have an abortion. Danna refused to do· so and told defendant he could "get out" if he insisted on her having an abortion. As their relationship continued to deteriorate, Danna explained to defendant that if he wanted a divorce she would do what was in the best interest of their children, which

could include Danna's taking them to New York to live closer to her family.

On 3 October 2008, defendant asked Danna to stay home from work so that the couple could discuss their relationship. Danna was 27 weeks pregnant at the time. She agreed to not go to work, and she spent the day at home with defendant. At approximately 3:30 p.m., Danna and defendant were in their bedroom discussing their marriage and looking at old photographs. Over the course of the day, Danna had received several work-related emails on her cell phone. Defendant stated he wanted her to focus on their conversation, and he put Danna's phone on a nightstand out of Danna's reach. Shortly thereafter, defendant said, " 'I'll be right back. We're doing good. We're on the right path. Just stay here.' " Defendant exited the room and returned moments later. As defendant came towards Danna, she believed that defendant was going to give her a hug. She felt defendant's arms around her and, at that moment, Danna was shot in the abdomen with a .45 caliber hollow point bullet. After she fell back onto the bed, defendant told Danna that "he just couldn't take it anymore." She pleaded with defendant to call for help, but defendant refused to call 911; he collected all phones and kept them out of Danna's reach. After hours of pleading for help, Danna agreed to tell law enforcement and emergency personnel that the shooting was accidental in order to persuade defendant to call 911. Defendant called 911 at 3:11 a.m. At the hospital, Danna's doctors discovered that the gunshot had punctured her colon, spilling fecal matter into her abdomen. This necessitated a cesarean section in order to treat Danna's injuries and give her child the greatest chance of survival.

After the delivery, the child, Lillian Grace Broom, was put on a ventilator. Over the first four days of her life, Lillian was taken on and off of the ventilator, until 7 October when Lillian was able to breathe on her own. Over the next several weeks, Lillian opened her eyes, moved her limbs, fed, and gained weight. On 4 November 2008, however, Lillian presented symptoms of necrotizing enterocolitis ("NEC"), a condition in which the cells of the intestine die. Lillian's NEC caused her health to deteriorate rapidly. That evening, after the doctors realized there was nothing more they could do for her, Lillian was taken off the respirator and allowed to die in her mother's arms. Danna survived.

On 10 August 2009, defendant was indicted for first-degree murder for the unlawful, willful, and felonious killing of Lillian with malice aforethought in violation of N.C. Gen. Stat. § 14-17. As to crimes

**STATE v. BROOM**

[225 N.C. App. 137 (2013)]

against Danna, defendant was indicted for attempted first-degree murder, first-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. The charges were joined for trial. A jury trial was held during the 27 September 2010 Criminal Session of the Superior Court for Alamance County, Judge J.B. Allen, Jr. presiding. The jury found defendant guilty of first-degree murder of Lillian on the basis of premeditation and deliberation and on the basis of felony murder. The jury also returned guilty verdicts for the charges of attempted first-degree murder of Danna, as well as first-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court sentenced defendant to life imprisonment without parole for first-degree murder and 157 to 198 months for attempted first-degree murder. The trial court entered a prayer for judgment continued on the convictions for first-degree kidnapping and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant gave oral notice of appeal in open court.

## Discussion

### A. First-Degree Murder

Defendant makes multiple arguments to contend that the trial court erred in denying his motion to dismiss the charge of first-degree murder based on premeditation and deliberation. First, defendant contends that Lillian cannot be the subject of a first-degree murder charge because she had not been born at the time Danna was shot. Second, defendant argues that Lillian's death was not caused by the gunshot wound to Danna. Third, defendant claims that the State failed to show substantial evidence of premeditation and deliberation. We disagree.

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In doing so, we must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When considering defendant's motion to dismiss, "the trial court must consider all evidence admitted, whether

competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied,* 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

**[1]** In support of his argument that Lillian was not the proper subject of a homicide offense, defendant relies on *State v. Beale,* 324 N.C. 87, 376 S.E.2d 1 (1989). In *Beale,* the defendant was charged with the felonious murder of "a viable but unborn child" with malice aforethought in violation of N.C. Gen. Stat. § 14-17. *Id.* at 88, 376 S.E.2d at 1. The *Beale* Court concluded that the defendant could not be prosecuted for the killing of a viable but unborn child under section 14-17, as the statute then existed. *Id.* at 93, 376 S.E.2d at 4. Despite the amendments to N.C. Gen. Stat. § 14-17 that have been enacted since that decision, the provisions of the statute relevant to *Beale* and this case remain substantively unchanged.[1] Thus, defendant insists that *Beale* is controlling and precludes his conviction for first-degree murder of Lillian based on premeditation and deliberation. Yet, *Beale* is readily distinguishable as the case involved the death of an unborn child. The evidence here established that Lillian was born alive and lived for one month before dying. Thus, the holding of *Beale* as it pertains to the killing of an unborn child affords defendant no relief.

Alternatively, defendant contends that the common law definition of murder as recognized by *Beale* does not support his prosecution for first-degree murder. In reaching its holding in *Beale,* the Supreme Court recognized that murder under section 14-17 is murder as defined by the common law, *id.* at 89, 376 S.E.2d at 2, and under the common law "the killing of a fetus is not criminal homicide unless it was born alive and subsequently died of *injuries inflicted prior to birth." Id.* at 92, 376 S.E.2d at 4 (emphasis added). Despite the legislature's amendments to section 14-17 since its original enactment, the Court discerned no intent by the legislature to provide for any change to this common law rule. *Id.* at 93, 376 S.E.2d at 4.[2] Defendant there-

---

1. N.C. Gen. Stat. § 14-17 (2011) states, in pertinent part: "A murder which shall be perpetrated by means of a nuclear, biological, or chemical weapon of mass destruction as defined in G.S. 14-288.21, poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree[.]"

2. We note that in 2011, the legislature enacted N.C. Gen. Stat. § 14-23.2 (2011), which provides for the criminal offense of murder of an unborn child and applies only to offenses committed on or after 1 December 2011. *See* 2011 N.C. Sess. Laws ch. 60, § 8.

fore argues that the common law definition of murder is inapplicable here as Lillian did not die of "injuries inflicted prior to birth[,]" *id.* at 92, 376 S.E.2d at 4. We cannot agree. While the record supports defendant's contention that the bullet did not strike the fetus, his insistence that the emergency cesarean section was performed solely for the safety of Danna is clearly contradicted by the record, and the record supports the conclusion that defendant's shooting of Danna started a foreseeable chain of events that led to Lillian's death.

The State presented the testimony of several medical experts that Danna's gunshot wound necessitated Lillian's early delivery, that the early delivery was a cause of Lillian's NEC, and that NEC resulted in Lillian's death. Dr. Chad Grotegut testified as an expert in maternal/fetal medicine that as a result of the shooting Danna sustained a rupture to her colon that spilled fecal matter into her abdomen. This not only placed Danna's life in danger but placed the fetus at a "high risk for developing a severe infection" and necessitated an emergency delivery. Dr. Robert Lenfestey and Dr. Susan Izatt both testified that in their professional opinions Lillian's medical problems were caused by her prematurity and that there were no indications that Lillian would have been born premature had it not been for her mother's gunshot wound. Dr. Margarita Bidegain testified that while babies carried to full term can develop NEC, such cases are "extremely rare," and that a baby's prematurity "is the only cause [doctors] know" for the infection. Viewed in the light most favorable to the State, we conclude this evidence was sufficient to permit a jury to conclude that by shooting Danna, defendant caused Lillian's premature delivery, which contributed to her developing NEC, the ultimate cause of Lillian's death. Thus, the jury could reasonably conclude that defendant was *a cause* of Lillian's death. Indeed, defendant conceded causation in his oral argument before this Court. Furthermore, defendant's criminal act need not have been the only cause of Lillian's death; to establish causation, it is sufficient that defendant's criminal act was a foreseeable cause of Lillian's death. *See State v. Jones,* 290 N.C. 292, 298, 225 S.E.2d 549, 552 (1976) ("To warrant a conviction for homicide the State must establish that the act of the accused was *a proximate cause* of the death. . . . '[T]he act of the accused *need not be the immediate cause* of the death. He is legally accountable if the direct cause is a natural result of his criminal act.' " (emphasis added) (citations omitted)).

[2] The State also provided sufficient evidence that defendant acted with premeditation and deliberation. Defendant was uninterested in having a second child and asked Danna to get an abortion. He told

friends that "one [child] was enough" and that he did not want any more children. Defendant was involved in a long-term extramarital affair with a woman who testified that defendant "counted down the years, months, days, seconds until [his first child] would go to college, so that he could leave." Defendant had made plans to move out of his martial home into a separate apartment, but reacted angrily when Danna suggested that if the couple divorced she might move out of the state and take the children with her. There was also evidence that shortly before defendant shot Danna, defendant took Danna's cell phone and placed it out of her reach. This evidence was sufficient to allow reasonable minds to conclude that defendant acted with premeditation and deliberation when he shot Danna. Because the State offered substantial evidence on each of the essential elements of first-degree murder and that defendant was the perpetrator of the offense, the trial court did not err in denying defendant's motion to dismiss the charge.

## B. Felony Murder

[3] Defendant also argues that the trial court erred in denying defendant's motion to dismiss the charge of felony murder where the kidnapping of Danna was the predicate felony. As we have concluded that the trial court did not err in denying defendant's motion to dismiss the charge of first-degree murder based on premeditation and deliberation, we do not reach this issue. *See State v. Britt*, 132 N.C. App. 173, 178, 510 S.E.2d 683, 687 ("We need not reach defendant's argument regarding the felony murder rule, because defendant's conviction predicated on the theory of murder with premeditation and deliberation was without error."), *disc. review denied*, 350 N.C. 838, 538 S.E.2d 571 (1999).

## C. Kidnapping

[4] Defendant argues that the trial court erred in denying his motion to dismiss the charge of kidnapping. However, where the trial court enters a prayer for judgment continued there is no final judgment from which to appeal. *See State v. Pledger*, 257 N.C. 634, 638, 127 S.E.2d 337, 340 (1962) ("Where prayer for judgment is continued and no conditions are imposed, there is no judgment, [and] no appeal will lie[.]"). As the trial court entered a prayer for judgment continued on defendant's conviction for first-degree kidnapping without imposing any conditions, there is no final judgment on this charge, and we do not reach this issue.

## D.  Attempted First-Degree Murder

**[5]**  Defendant argues that the trial court erred in denying his motion to dismiss the charge of attempted first-degree murder of Danna because the evidence raised only a suspicion of specific intent to kill. We disagree.

To commit the crime of attempted first-degree murder, a defendant must act with the specific intent to kill. *State v. Edwards*, 174 N.C. App. 490, 497, 621 S.E.2d 333, 338 (2005). To establish specific intent to kill Danna, the State was required to show not only that defendant acted intentionally in shooting his wife, but did so with the intention that the shooting result in her death. *See id.* (citing *State v. Keel*, 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992)). Intent to kill is a mental state that ordinarily can only be proven by circumstantial evidence including the "nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances . . . ." *Id.* The State presented evidence that defendant removed Danna's cell phone from her reach, left the room, returned with a .45 caliber pistol, and shot her in the abdomen with a hollow point bullet. Defendant then denied Danna medical assistance for approximately twelve hours. When viewed in the light most favorable to the State, we conclude there was substantial evidence from which the jury could conclude that defendant shot Danna with the specific intent to kill. *See Smith*, 300 N.C. at 78-79, 265 S.E.2d at 169 (stating that the substantial evidence required to survive a defendant's motion to dismiss is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Therefore, the trial court did not err in denying defendant's motion to dismiss the charge of attempted first-degree murder.

## E.  *Voir Dire*

**[6]**  Defendant argues that the trial court erred in limiting his *voir dire* of prospective jurors and in denying his request to be provided, prior to *voir dire*, the jury instruction the trial court intended to use when instructing the jury on the law regarding the killing of an unborn fetus. These limitations, defendant contends, denied him the opportunity to intelligently exercise his peremptory challenges and secure an impartial jury.

Defendant argues that the alleged errors in the jury selection process were structural errors and are reversible *per se. See State v. Garcia*, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (noting that structural error is a "rare form of constitutional error" resulting from

a defect in the trial process that necessarily renders a trial fundamentally unfair), *cert. denied,* 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). The errors alleged by defendant, however, are not the types of errors recognized by our Courts as structural errors. *See id.* at 409-10, 597 S.E.2d at 744-45 (identifying the six categories of structural errors recognized by the United States Supreme Court and noting that the Supreme Court of North Carolina has declined to expand those categories). Rather, defendant "must show prejudice, as well as clear abuse of discretion, to establish reversible error" in the trial court's limitations on his *voir dire* of prospective jurors. *State v. Syriani,* 333 N.C. 350, 372, 428 S.E.2d 118, 129, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

We conclude defendant has failed to show abuse of discretion or prejudice. During jury selection, defense counsel attempted to ask prospective jurors about their views on abortion and when life begins, and whether the jurors held such strong views on the subjects that they would be unable to apply the law. The trial court sustained the State's objection to the line of questioning, and defendant's counsel then rephrased the question to ask if the jurors held strong views about "the death of a baby, because that's what happened in this case." These questions apparently confused prospective jurors as several inquired about the relevancy of their opinions on abortion. As one prospective juror put it, "You're saying one thing and you're kind of going somewhere else with this out in right field."

The trial judge then informed the prospective jurors, that because the evidence had not been introduced, he did not know the instructions he would give them, but it was their duty to apply the law as provided to them, not as they might like the law to be. All prospective jurors agreed they could apply the law as it was provided to them by the court. We conclude the trial court did not abuse its discretion when it sustained the State's objection to questioning that was confusing and not relevant to the trial. *See State v. Vinson,* 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *death sentence vacated,* 428 U.S. 902, 49 L. Ed. 2d 1206 (1976) (stating that "hypothetical questions so phrased as to be ambiguous and confusing . . . are improper and should not be allowed"). Nor was defendant prejudiced by the trial court's limitation on his questioning of prospective jurors regarding their views on abortion and when life begins in a case involving the death of a child who was born alive; the questions were not necessary to defense counsel's determination of how to intelligently exercise defendant's peremptory challenges.

**[7]** Similarly, we conclude the trial court did not err in denying defendant's request for an instruction on the law regarding the killing of an unborn child. In *State v. Conaway*, 339 N.C. 487, 507, 453 S.E.2d 824, 837, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995), the defendant made a similar argument that the trial court erred in denying his request for a preselection instruction intended to "clarify the law" before he questioned prospective jurors. In rejecting this argument, our Supreme Court noted that the trial court's instructions were substantively similar to the defendant's requested instruction, and, ultimately, the trial court properly instructed the jury on the law. *Id.* at 508, 453 S.E.2d at 838. Here, defendant has failed to include the requested instruction in the record. Ultimately, however, the trial court properly instructed the jury that "a fetus that is borned [sic] alive and subsequently dies of injuries inflicted prior to the birth is a human being" for the purpose of the crime of first-degree murder. We discern no abuse of discretion in the trial court's denial of defendant's request for a preselection jury instruction regarding the killing of an unborn child, and defendant's argument is overruled.

## F. Request for Jury Instruction on Second-Degree Murder

**[8]** Defendant next argues that the trial court erred in denying his request for an instruction on second-degree murder. Defendant contends that the evidence did not give rise to a reasonable inference that defendant acted with premeditation and deliberation to kill Lillian. We disagree.

The trial court must give a jury instruction on a lesser-included offense "only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002). We review *de novo* the trial court's decision on whether to instruct the jury on a lesser-included offense. *State v. Debiase*, ___ N.C. App. ___, ___, 711 S.E.2d 436, 441, *disc. review denied*, 365 N.C. 335, 717 S.E.2d 399 (2011). "In determining whether the evidence is sufficient to support the submission of the issue of a defendant's guilt of a lesser included offense to the jury, 'courts must consider the evidence in the light most favorable to [the] defendant.'" *Id.* (quoting *State v. Clegg*, 142 N.C. App. 35, 46, 542 S.E.2d 269, 277, *disc. review denied*, 353 N.C. 453, 548 S.E.2d 529 (2001)). However, the trial court does not err in not instructing the jury on second-degree murder as a lesser included offense of first-degree murder " '[i]f the evidence is sufficient to fully satisfy the State's burden of proving each and every

element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense[.]' " *State v. Locklear*, 363 N.C. 438, 454-55, 681 S.E.2d 293, 306 (2009) (quoting *State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986)).

Premeditation means that the defendant's act "was thought out beforehand for some length of time, however short . . . . Deliberation means an intent to kill, carried out in a cool state of blood . . . to accomplish an unlawful purpose and not under the influence of a violent passion[.]" *State v. Lane*, 328 N.C. 598, 608-09, 403 S.E.2d 267, 274, *cert. denied*, 502 U.S. 915, 116 L. Ed. 2d 261 (1991). Premeditation and deliberation are frequently proven through circumstantial evidence, such as lack of provocation on the part of the deceased, the "conduct and statements of defendant before and after the killing," ill-will between the parties, and "evidence that the killing was done in a brutal manner." *Id.* at 609, 403 S.E.2d at 274 (citation and quotation marks omitted).

Here, the State offered substantial evidence to support the jury's finding of premeditation and deliberation in the murder of Lillian. The State's evidence tended to show that defendant did not want a second child. Immediately before defendant shot his pregnant' wife, defendant placed her cell phone out of her reach, and briefly left the room. Upon his return, defendant came towards Danna, shot her in her abdomen with a hollow point bullet using a .45 caliber pistol, and refused to call for medical assistance for approximately twelve hours. In his defense, defendant insisted that Danna shot herself. Because defendant did not provide evidence negating premeditation and deliberation other than his denial that he committed the offense, defendant was not entitled to an instruction on second-degree murder. *See State v. Smith*, 351 N.C. 251, 268, 524 S.E.2d 28, 40 (citing *Strickland*, 307 N.C. at 293, 298 S.E.2d at 657–58, and concluding the defendant was not entitled to an instruction on a lesser included offense of involuntary manslaughter where evidence supported each element of first-degree murder "and there was no other evidence to negate these elements other than defendant's denial that he committed the offense"), *cert. denied*, 531 U.S. 862, 148 L. Ed. 2d 100 (2000).

## G. Double Jeopardy

[9] Lastly, defendant argues that the trial court erred in allowing the jury to return guilty verdicts of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious bodily injury because the crimes were based on "precisely the same conduct." However, the trial court entered a prayer for judgment continued on defendant's conviction of assault with a deadly weapon with intent to kill inflicting serious bodily injury and did not impose any conditions upon defendant in so doing. Consequently, there is there is no final judgment on this conviction from which defendant may appeal. *Pledger*, 257 N.C. at 638, 127 S.E.2d at 340. Therefore, we do not reach this issue.

### Conclusion

In sum, the trial court did not err in denying defendant's motions to dismiss the charges of first-degree murder or attempted first-degree murder, in refusing to instruct the jury on second-degree murder, in limiting defendant's *voir dire* of prospective jurors, or in denying defendant's request for a preselection jury instruction. Because we find no error regarding defendant's conviction for first-degree murder based on premeditation and deliberation, we do not reach the issue of whether the trial court erred in denying defendant's motion to dismiss the charge based on the felony murder rule. We do not reach defendant's argument regarding the trial court's denial of defendant's motion to dismiss the charge of first-degree kidnapping and the charge of assault with a deadly weapon inflicting serious injury as no final judgments were entered related to these charges. Accordingly, we find no error.

No Error.

Judges CALABRIA and ROBERT N. HUNTER, JR. concur.