STATE OF NORTH CAROLINA v. JERRY LEWIS CUNNINGHAM

No. 9118SC818

(Filed 15 December 1992)

1. **Criminal Law § 321 (NCI4th)— conspiracy to sell and deliver controlled substance—joinder of defendants for trial—no error**

    The trial court did not err in a prosecution for conspiracy to sell and deliver crack by joining two defendants for trial where at least one of the statutory prerequisites for joinder is present in that the offense with which both defendants were charged was part of the same act or transaction. Although the record contains no evidence of a written motion for joinder by the State, the Court assumed that the motion was properly made because defendant did not contend otherwise. N.C.G.S. § 15A-926(b).

    **Am Jur 2d, Trial §§ 157-175.**

2. **Criminal Law § 339 (NCI4th)— conspiracy to sell and deliver controlled substance—motion to sever trials—no prejudice from denial**

    A defendant in a prosecution for conspiracy to sell and deliver crack failed to show that the trial court's denial of his motion to sever deprived him of a fair trial where the only evidence elicited by his co-defendant's counsel (O'Hale) which could be deemed prejudicial to defendant was properly elicited by the State at defendant's consolidated trial and could have been properly elicited by the State if defendant had been tried alone. Moreover, the evidence against the co-defendant (Young) was weak and resulted in her acquittal.

    **Am Jur 2d, Trial §§ 157-175.**

3. **Criminal Law § 105 (NCI4th)— conspiracy to sell and deliver controlled substance—discovery of tests—report furnished insufficient—no prejudice**

There was no prejudice in a prosecution for conspiracy to sell and deliver crack where the sole document provided to defendant before trial was the SBI "laboratory report," which revealed only the ultimate result of the numerous tests performed and did not enable defense counsel to determine what tests were performed, whether the testing was appropriate, or to become familiar with the test procedures. The information sought by defendant was discoverable pursuant to N.C.G.S. § 15A-903(e) and Article I, Section 19 of the North Carolina Constitution but not under the United States Constitution because there was no evidence that the information was exculpatory; however, the State met its burden of showing that the trial court's failure to grant defendant's discovery request was harmless beyond a reasonable doubt because the State presented overwhelming evidence of defendant's guilt.

**Am Jur 2d, Depositions and Discovery § 449.**

**Right of accused in state court to have expert inspect, examine, or test physical evidence in possession of prosecution —modern cases. 27 ALR4th 1188.**

4. **Criminal Law § 1097 (NCI4th)— conspiracy to sell and deliver controlled substance—sentencing—prosecutor's statement of prior convictions—defense counsel's response—stipulation or admission**

The trial court did not err when sentencing defendant for conspiracy to sell or deliver crack by finding as an aggravating factor that defendant had a prior conviction punishable by more than sixty days' confinement where, in response to the prosecutor's statement at sentencing that defendant has prior convictions of loitering and resisting a public officer, defense counsel stated, "Judge, we'd object to the loitering. That doesn't carry sixty days." Such a response is unequivocal and is tantamount to an admission or stipulation that defendant has the prior convictions asserted by the State. N.C.G.S. § 15A-1340.4(e).

**Am Jur 2d, Criminal Law §§ 598, 599.**

STATE v. CUNNINGHAM

[108 N.C. App. 185 (1992)]

Appeal by defendant from judgment entered 13 March 1991 in Guilford County Superior Court by Judge Julius A. Rousseau, Jr. Heard in the Court of Appeals 16 October 1992.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Lorinzo L. Joyner, for the State.*

*Assistant Public Defender Frederick G. Lind for defendant-appellant.*

GREENE, Judge.

Defendant appeals from a judgment entered 13 March 1991, which judgment is based on a jury verdict convicting defendant of conspiracy to commit the felony of sale and delivery of a controlled substance, N.C.G.S. § 90-98 (1990).

The evidence presented by the State established that on 6 September 1990, defendant, Juanita Simmons (Simmons), Vanessa Young (Young), Ronald Hubbard (Hubbard), and Ella Jackson (Jackson) were in Hubbard's apartment at 303-A Avalon Road in Greensboro smoking crack cocaine. At approximately 11:30 p.m., several men drove into the parking lot. Young was standing outside, and according to Simmons' testimony, the men talked to Young about purchasing drugs. Young returned to the apartment, and Simmons obtained a "fifty," or one piece of cocaine worth $50.00, from defendant and took it outside to one of the men. The man told Simmons that he needed more crack because he had his friends with him, and Simmons returned to the apartment and obtained another "fifty" from defendant. Simmons gave both of the pieces of crack to the man in exchange for $100.00 in cash. She returned to the apartment and gave the money to defendant, then left the apartment with defendant and Jackson. Simmons was arrested when she and defendant returned to the apartment later that evening.

Detective Fulmore of the Vice/Narcotics Division of the Greensboro Police Department testified that on 6 September 1990, he and Detectives Reece, Phifer, and McMinn were involved in an undercover drug investigation in southeastern Greensboro. As part of that investigation, the police officers drove to an apartment located at 303-A Avalon Road at approximately 11:30 p.m. and discussed with Young, who was standing outside of the apartment, the possibility of purchasing drugs. Young went inside the apartment and Simmons emerged and approached the officers' car. Detec-

tive Fulmore purchased two white rock-like substances from Simmons for $100.00 in cash. Detective Phifer placed distinct folds in the bills used by Detective Fulmore to purchase the drugs.

Detective Fulmore returned to the apartment with additional officers approximately thirty to forty minutes after the initial drug purchase. When police knocked on the apartment door, Young answered and allowed them to enter. Hubbard testified that he was present when the police entered and was also present when defendant gave Simmons the two $50.00 pieces of crack cocaine to sell to the officers. Hubbard also saw Simmons give the proceeds of the sale to defendant. Hubbard gave the officers permission to search the premises. Simmons and defendant returned to the apartment while the officers were conducting the search. Detective Phifer conducted a pat-down search of defendant and found $312.00 in cash. Included in that amount were the folded bills in the denominations used by Detective Fulmore to purchase the rock-like substance from Simmons. Detective Phifer testified that defendant told him that he had purchased the two pieces of rock-like substance for $80.00 from an area called "The Hill."

The State Bureau of Investigation (SBI) conducted a laboratory analysis of the rock-like substance purchased from Simmons. Nancy Higgins (Higgins), a special agent with the SBI and a forensic drug chemist, performed a series of tests on the substance which revealed that the substance, weighing 0.4 grams, contained cocaine, a Schedule II controlled substance. Defendant was indicted for conspiracy to commit the sale and delivery of a controlled substance.

Prior to trial, upon request by defendant, the State provided defendant with a laboratory report which contained the following information: (1) the item submitted for analysis: "plastic bag containing off-white hard material"; (2) the type of analysis requested: "analyze for controlled substances"; (3) the results of the analysis: "cocaine base—Schedule II; weight of material—0.4 gram"; and (4) the disposition of evidence: "the unconsumed portion of the evidence is being retained for pick-up." Several days prior to trial, defendant filed a motion pursuant to N.C.G.S. § 15A-903(e) to discover all of the testing procedures and data derived as a result of the chemist's tests and examination of the rock-like substance purchased from Simmons. This motion was not ruled on until trial. On a motion by the State, defendant's case was joined for trial with that of Young, who was also charged with conspiracy to com-

mit the sale and delivery of cocaine. Young was represented by Greensboro Assistant Public Defender Robert O'Hale (O'Hale), and defendant was represented by Greensboro Assistant Public Defender Frederick Lind (Lind). Defendant unsuccessfully moved to sever the cases on the ground that O'Hale had advised Lind that O'Hale might be put in the position of having to attack defendant at trial in order to defend Young. Defendant renewed his motion to sever during trial and unsuccessfully moved for a mistrial based on the trial court's denial of his motions to sever.

At trial, in support of his earlier discovery motion, defendant introduced as *voir dire* exhibits the form used by Higgins to indicate the various tests performed by Higgins on the rock-like substance and the result of each (referred to by Higgins at trial as her "notes"), as well as a graph depicting an infrared scan of the substance, the scan being one of the tests performed by Higgins. The discovery motion was denied by the trial court. The trial court also denied a motion by defendant to suppress evidence, specifically $312.00 in cash, seized from his person. Defendant also moved for a mistrial based on the prosecutor's questioning of Hubbard regarding whether Hubbard had seen defendant with drugs prior to the day on which defendant was arrested, and based on the prosecutor's comment during his closing argument that crack cocaine "is a problem in our community and in every other community."

The jury convicted defendant as charged, however, it acquitted Young. At sentencing, the following exchange took place:

THE COURT: All right. What, if any, prior criminal record does this defendant have?

[THE PROSECUTOR]: Your Honor, this defendant, at 89 Cr 75412, was convicted of loitering for the purpose of drug-related activity. That was on 12/20/1989. He was subsequently convicted of resisting and obstructing a public officer at 89 Cr 75411. He was convicted on the same date, Your Honor. That is the defendant's prior record to date.

THE COURT: All right, Mr. Lind.

MR. LIND: Judge, we'd object to the loitering. That doesn't carry 60 days.

THE COURT: Well, is that a city ordinance or —

MR. LIND: City ordinance.

THE COURT: All right, I'll disregard the loitering.

The trial court found as an aggravating sentencing factor that defendant has a criminal record punishable by more than sixty days' imprisonment. The court found no sentencing factors in mitigation, and sentenced defendant to a prison term of six years, a term in excess of the presumptive term. The trial court denied defendant's motion to arrest judgment based on the alleged failure of the indictment to allege every element of the offense charged. Defendant appeals.

———

The issues are whether (I) the trial court abused its discretion by granting the State's motion for joinder of defendant and Vanessa Young for trial and by denying defendant's motion to sever his trial from that of Young; (II) defendant was entitled to pretrial discovery of the chemist's laboratory form indicating the various tests performed on the rock-like substance at issue and the results thereof, and the graph of the infrared scan and, if so, whether the trial court's refusal to order production of such documents upon motion by defendant constitutes reversible error; and (III) defendant effectively stipulated to the prosecutor's assertion that defendant has a prior conviction for a criminal offense punishable by more than sixty days' confinement.

I

Defendant argues that the trial court's grant of the State's motion for joinder and its denial of his motions to sever his trial from that of Vanessa Young, and for a mistrial based on the court's refusal to sever the trials, deprived him of a fair trial. We disagree.

### Joinder

[1] The trial court, in its discretion, may join two defendants for trial upon written motion of the prosecutor (1) when each of the defendants is charged with accountability for each offense, or (2) when the several offenses charged were part of a common scheme or plan or of the same act or transaction, or were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others. N.C.G.S. § 15A-926(b) (1988). The joinder of two defendants charged with the same crime or crimes is not only permissible under Section

15A-926, but "public policy strongly compels consolidation as the rule rather than the exception." *State v. Belton*, 318 N.C. 141, 147, 347 S.E.2d 755, 759 (1986) (citations omitted).

The record in the instant case indicates that at least one of the statutory prerequisites for joinder is present in that the offense with which both defendant and Young were charged was part of the same act or transaction. And although the record contains no evidence of a written motion for joinder by the State, we assume that it was properly made in light of the fact that defendant does not contend otherwise. *See Belton*, 318 N.C. at 147 n.2, 347 S.E.2d at 759 n.2 (where defendant does not contest joinder on the ground that written motion was not made by prosecution, Court assumes proper motion was made).

## Severance

[2] When a defendant moves for severance of multiple defendants who have been joined for trial, the trial court must grant the motion whenever (1) if before trial, it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants, or, (2) if during trial, it is found necessary to achieve a fair determination of the guilt or innocence of that defendant. N.C.G.S. § 15A-927(c) (1988). A trial court's denial of a defendant's motion to sever trials is discretionary, and will not be disturbed unless the defendant shows that the joinder has deprived him of a fair trial. *State v. Porter*, 303 N.C. 680, 688, 281 S.E.2d 377, 383 (1981).

> Mere inconsistencies in defenses do not necessarily amount to the kind of antagonism between defendants joined for trial that deprives one or the other of a fair trial. Rather, the defenses must be "so irreconcilable that 'the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty' . . . [or] so discrepant as to pose an evidentiary contest more between defendants themselves than between the State and the defendants . . . [resulting in a] spectacle where the State simply stands by and witnesses 'a combat in which the defendants [attempt] to destroy each other.'"

*Belton*, 318 N.C. at 148, 347 S.E.2d at 760 (citations omitted).

In the instant case, defendant points to testimony elicited by O'Hale on cross-examination of Detectives Reece and Phifer as being "very damaging to the defendant." However, our review of the transcript reveals otherwise. O'Hale elicited nothing on cross-

examination of Detective Reece which could be considered "damaging" or prejudicial to defendant. O'Hale asked Detective Reece only one question regarding defendant: "Okay. [Defendant] never said anything at all about Vanessa Young, did he?" Detective Reece responded, "He never did." Detective Phifer testified on cross-examination by O'Hale that defendant had given a statement to police in which he admitted purchasing drugs from "The Hill" area for $80.00 in an attempt to sell them for $100.00 in order to make a $20.00 profit. However, identical testimony had previously been elicited by the prosecutor in her direct examination of Detective Phifer. Co-defendant Young did not testify at trial.

The testimony elicited by O'Hale regarding defendant's statement to police—the only evidence elicited by O'Hale which could be deemed prejudicial to defendant—was properly elicited *by the State* at defendant's consolidated trial, and could have been properly elicited by the State if defendant had been tried alone. Moreover, the evidence against Young was weak and resulted in her acquittal. Thus, defendant cannot contend that his association with Young prejudiced the jury against him. In sum, defendant has failed to show that the trial court's denial of his motion to sever his trial from that of Young deprived him of a fair trial.

II

[3] Defendant argues that the trial court erred by denying his motion to discover the tests performed on, and the data derived therefrom, the rock-like substance sold to police officers on the night in question. According to defendant, the copy of a laboratory report provided by the SBI indicating that the substance analyzed was cocaine base and weighed 0.4 grams is a mere conclusion of the chemical examiner as to the presence of a certain controlled substance and is insufficient to enable defense counsel to adequately prepare for trial, thereby depriving defendant of his right to due process of law, a fair trial, confrontation, and the right to compulsory process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and of his rights under Article 1, Sections 19 and 23 of the North Carolina Constitution.

Whether a criminal defendant is entitled to a chemist's laboratory tests performed during a controlled substance analysis, and the data derived therefrom, is an issue of first impression for our Courts.

STATE v. CUNNINGHAM

[108 N.C. App. 185 (1992)]

## Statutory Right to Criminal Discovery of Scientific Tests

In North Carolina, several different categories of the State's case are available to a criminal defendant pursuant to statute. *See* N.C.G.S. § 15A-903 (1988). North Carolina Gen. Stat. § 15A-903, enacted in 1973, provides in pertinent part:

> (e) Reports of Examinations and Tests.—Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor. . . .

N.C.G.S. § 15A-903(e) (1988). The Official Commentary to Section 15A-903 indicates that Section 15A-903 was patterned after Federal Rule of Criminal Procedure 16, which was initially adopted in 1946 and amended several times thereafter. *See* N.C.G.S. § 15A-903 (1988), Official Commentary; *see also State v. Brown,* 306 N.C. 151, 163, 293 S.E.2d 569, 578, *cert. denied,* 459 U.S. 1080, 74 L. Ed. 2d 642 (1982) (Rule 16 of the Federal Rules of Criminal Procedure is the "federal counterpart of our G.S. 15A-903"). Accordingly, cases and commentary construing Rule 16 provide guidance regarding the proper construction of Section 15A-903(e). *Cf. Brewer v. Harris,* 279 N.C. 288, 292, 182 S.E.2d 345, 347 (1971) (because federal rules are the source of the North Carolina Rules of Civil Procedure, we look to the decisions of federal jurisdictions for guidance). Federal Rule 16 contains the following provision:

> (D) Reports of Examinations and Tests. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

Fed. R. Crim. P. 16(a)(1)(D). Under both Section 15A-903(e) and federal Rule 16, the disclosure of discoverable "results or reports" of examinations or tests is mandatory. *See* N.C.G.S. § 15A-903(e) (1988) (upon motion of defendant, the trial court *must* order access by defendant to results or reports); Fed. R. Crim. P. 16 advisory committee's note, 1974 amendment.

Because of the extraordinarily high probative value generally assigned by jurors to expert testimony, of the need for intensive trial preparation due to the difficulty involved in the cross-examination of expert witnesses, and of the inequality of investigative resources between prosecution and defense regarding evidence which must be analyzed in a laboratory, federal Rule 16 has been construed to provide criminal defendants with broad pretrial access to a wide array of medical, scientific, and other materials obtained by or prepared for the prosecution which are material to the preparation of the defense or are intended for use by the government in its case in chief. *See* Daniel A. Rezneck, *The New Federal Rules of Criminal Procedure*, 54 Geo. L.J. 1276, 1278 (1966). Such material includes not only conclusory reports by chemists indicating that an "analysis" revealed the presence of a controlled substance, but also the results of any tests performed or procedures utilized by the chemists to reach such a conclusion. *Id.; see also* 2 A.B.A. Standards for Criminal Justice, Commentary to Standard 11-2.1(a)(iv) (2d ed. 1980 & Supp. 1986) (advocating pretrial access by defense counsel to "relevant tests" to enable counsel to determine that the tests performed were appropriate and to become familiar with test procedures); Fed. R. Crim. P. 16 advisory committee's note, 1974 amendment (indicating that the term "any results or reports" is to be given a liberal, not a restricted construction); *United States v. Penix*, 516 F. Supp. 248 (W.D. Okla. 1981) (defendant entitled to copies of all scientific tests performed on cocaine pursuant to his request for "any and all results" of physical or mental examination or of tests); *State v. Burgess*, 482 So. 2d 651 (La. Ct. App. 1985) (discovery statute similar in part to federal Rule 16 required more than the conclusory report of two experts in order to afford defendant an opportunity to prepare adequately for trial).

As previously discussed, the relevant portion of Section 15A-903(e) provides that, upon motion by defendant, the court *must* order the prosecutor to allow defendant access to "results or reports . . . of tests . . . made in connection with the case . . . [and] within the possession, custody, or control of the State . . . ." Like

STATE v. CUNNINGHAM

[108 N.C. App. 185 (1992)]

federal Rule 16(a)(1)(D), Section 15A-903(e) must be construed as entitling a criminal defendant to pretrial discovery of not only conclusory laboratory reports, but also of any tests performed or procedures utilized by chemists to reach such conclusions. However, unlike under federal Rule 16(a)(1)(D), no requirement exists that such information be material to the preparation of the defense or intended for use by the State in its case in chief.

## Constitutional Right To Criminal Discovery of Scientific Tests

### United States Constitution

With the exception of evidence falling within the realm of the *Brady* rule, *see Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963) (prosecution has duty under the Due Process Clause to disclose evidence favorable to the defendant upon request), there is no general right to discovery in criminal cases under the United States Constitution, thus a state does not violate the Due Process Clause of the Federal Constitution when it fails to grant pretrial disclosure of material relevant to defense preparation but not exculpatory. 2 Charles A. Wright, *Federal Practice and Procedure: Criminal 2d* § 252 (1982) (citing *Weatherford v. Bursey*, 429 U.S. 545, 51 L. Ed. 2d 30 (1977)); 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.3(a) (1984 & Supp. 1991).

### North Carolina Constitution

Although the extent to which a criminal defendant is entitled to discovery under the United States Constitution seems to be well-settled, the scope of a defendant's right to discovery in a criminal case under Article I, Section 19 of the North Carolina Constitution has not been well-defined by our Courts. Despite the fact that our Courts are bound by federal court decisions construing the Due Process Clause of the United States Constitution, such decisions do not control an interpretation by our Courts of the Law of the Land Clause contained in the North Carolina Constitution. *McNeil v. Harnett County*, 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990). Thus, our Courts have recognized a criminal defendant's due process right in limited circumstances to inspect the crime scene, *see Brown*, 306 N.C. at 163-64, 293 S.E.2d at 578, and to have an independent chemical analysis performed upon seized substances. *See State v. Jones*, 85 N.C. App. 56, 65-66, 354

STATE v. CUNNINGHAM

[108 N.C. App. 185 (1992)]

S.E.2d 251, 257, *disc. rev. denied*, 320 N.C. 173, 358 S.E.2d 61 (1987).[1]

The record in the instant case indicates that Agent Higgins performed a number of tests on the substance at issue, including a Marquis test, a cobalt thiocyanate test, a microcrystalline test, and an infrared spectroscopy. Higgins entered the result of each of these tests on a one-page form. In addition, Higgins generated a graph during her performance of the infrared spectroscopy. The trial court denied defendant pretrial access to both the form and the graph. On direct examination at trial, using the form, Higgins testified regarding her performance of "all of these different tests." The trial court denied defendant's request for a recess in order to review some of "the items" to which Higgins referred in her testimony, but allowed defendant time to review the documents during his cross-examination of Higgins.

In sum, the sole document provided to defendant before trial by the State was the SBI "laboratory report." This report, which basically is limited to a statement that the material analyzed contained cocaine, reveals only the ultimate result of the numerous tests performed by Agent Higgins. As such, it does not enable defendant's counsel to determine what tests were performed and whether the testing was appropriate, or to become familiar with the test procedures. We conclude that the information sought by defendant is discoverable pursuant to Section 15A-903(e) and the North Carolina Constitution, *cf. State v. Goldberg*, 261 N.C. 181, 192-93, 134 S.E.2d 334, 341, *cert. denied*, 377 U.S. 978, 12 L. Ed. 2d 747 (1964) (defendants have no unqualified right under the State constitution to "an inspection of all papers and documents, if any, in the files of the [SBI]"), and therefore the trial court erroneously denied defendant's motion for pretrial discovery of these documents. Defendant in this case has no federal constitutional right to such discovery because there is no evidence that the information was exculpatory.

However, even under the heightened standard of review applied by this Court to constitutional errors, the State has met its burden of showing that the trial court's failure to grant defend-

---

1. A defendant currently enjoys a concomitant statutory right to inspect the crime scene and to independently analyze seized substances. *See* N.C.G.S. § 15A-903(d), (e) (1988).

ant's discovery request was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b) (1988); *State v. Wallace*, 104 N.C. App. 498, 505, 410 S.E.2d 226, 230 (1991), *disc. rev. denied*, 331 N.C. 290, 416 S.E.2d 398 (1992) (harmless beyond a reasonable doubt proper standard for violations of both federal and state constitutions). This is so because the State presented overwhelming evidence of defendant's guilt, including testimony from others present at the apartment on the night in question that defendant and others were "smoking crack" and "getting high" (tending to corroborate Higgins' testimony that the substance seized was indeed cocaine) and testimony from police officers that defendant admitted that he purchased drugs from "The Hill" to resell prior to being arrested.

III

[4]  Defendant argues that the trial court committed reversible error by finding as an aggravating sentencing factor that defendant has a prior conviction for a criminal offense punishable by more than sixty days' confinement. Specifically, defendant contends that the trial court's finding is based on the mere unsworn assertion by the prosecutor of defendant's criminal record, which as a matter of law cannot support such a finding.

Under the Fair Sentencing Act, N.C.G.S. § 15A-1340.1 *et seq.*, the trial court may not, absent a stipulation of the parties, find as an aggravating factor a defendant's prior conviction where the only evidence to support it is the prosecutor's mere assertion that the factor exists. *See* N.C.G.S. § 15A-1340.4(e) (1988) (prior conviction may be proved by stipulation or by presentation of either the original or a certified copy of the court record of the prior conviction); *State v. Thompson*, 309 N.C. 421, 424-25, 307 S.E.2d 156, 159 (1983). However, a defense counsel's response to the prosecutor's assertion of a prior conviction can in certain cases constitute a stipulation or an admission that the defendant indeed has the convictions represented by the State. *State v. Brewer*, 89 N.C. App. 431, 436, 366 S.E.2d 580, 583, *disc. rev. denied*, 322 N.C. 482, 370 S.E.2d 229 (1988) (when prosecutor stated that defendant had eleven and fourteen-year-old convictions, defense counsel's response that defendant's record indicated no convictions for almost ten years constituted an admission that defendant did have the two older convictions); *State v. Albert*, 312 N.C. 567, 579-80, 324 S.E.2d 233, 241 (1985) (when asked if any of the three defendants had a prior criminal record, prosecutor's response that "only Mr.

Dearen" had one constituted a stipulation that neither of the other two defendants had a criminal record and supported that fact in mitigation); *see also State v. Canady*, 330 N.C. 398, 399-400, 410 S.E.2d 875, 877 (1991) (defendant's *silence* while the prosecuting attorney makes a statement does *not* support an inference that defendant consented to the statement).

In the instant case, in response to the prosecutor's statement at sentencing that defendant has prior convictions of loitering and resisting a public officer, defense counsel stated, "Judge, we'd object to the loitering. That doesn't carry sixty days." Such a response is unequivocal and is tantamount to an admission or stipulation that defendant has the prior convictions asserted by the State, and, accordingly, we reject this assignment of error.

We have reviewed defendant's remaining assignments of error, and have determined that they are either without merit or do not constitute prejudicial error entitling defendant to a new trial.

No error.

Judges WYNN and WALKER concur.