STATE OF NORTH CAROLINA v. ANDRE IJARN EDWARDS, Defendant

No. COA04-1504

(Filed 15 November 2005)

**1. Discovery— motion for production—laboratory protocols associated with DNA testing**

The trial court did not commit prejudicial error in a prosecution for first-degree murder, first-degree rape, and other crimes by denying defendant's written motion for production of the laboratory protocols associated with DNA testing that would be presented at trial, because the error was harmless beyond a reasonable doubt when the question of defendant's identity was not at issue during this trial based on defendant's choice of defense. Thus, the State did not need the DNA evidence to link defendant to the crimes. N.C.G.S. § 15A-903(e).

**2. Evidence— failure to allow expert testimony—psychologist**

The trial court did not err in a prosecution for first-degree murder, first-degree rape, and other crimes by excluding testimony of defendant's psychologist concerning certain conversations he had with defendant, because the State did not choose to explore the basis for the defense expert's opinion at trial, and thus, the trial court was not obligated to allow the expert to testify regarding the statements made by defendant.

**3. Homicide— attempted murder—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of attempted murder of an 11-month-old child because the evidence viewed in the light most favorable to the State revealed that: (1) a jury could reasonably conclude from the facts that defendant knew that no one would discover the mother's body and the child for a long time in a deserted area; and (2) the evidence was sufficient for a jury to decide that defendant would not expect an 11-month-old child to survive in a remote location, but would starve, die of dehydration, and/or exposure, or suffer from such effects of nature as insects and wild animals before anyone found him.

**4. Appeal and Error— preservation of issues—failure to argue**

Assignments of error that defendant did not argue on appeal are deemed abandoned under N.C. R. App. P. 28(a).

**STATE v. EDWARDS**

[174 N.C. App. 490 (2005)]

Appeal by defendant from judgments entered 26 March 2004 and 11 October 2004 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 22 August 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General A. Danielle Marquis, for the State.*

*Winifred H. Dillon for defendant-appellant.*

GEER, Judge.

This appeal arises out of defendant Andre Ijarn Edwards' conviction of a number of charges resulting from a carjacking and the subsequent rape and murder of Ginger Hayes and the attempted murder of her 11-month-old son, Nicholas. On appeal, defendant argues that the trial court erred by denying his motion to allow into evidence the laboratory protocols associated with DNA testing in this case. We hold this error to be harmless beyond a reasonable doubt because the question of defendant's identity was not at issue during his trial, and therefore the State did not need the DNA evidence to link defendant to the crimes. Defendant also argues that the trial court erred by not allowing his psychologist to testify to the substance of certain conversations he had with defendant. Because, however, the State did not choose to explore the basis for defendant's expert's opinion at trial, the trial court was not obligated to allow the expert to testify regarding the statements made by defendant. As for defendant's final contention, we hold, based on our review of the record, that the trial court properly denied defendant's motion to dismiss the charge of attempted murder.

## Facts

The State's evidence in this case tended to show the following. On 30 June 2001, Jeremy and Ginger Hayes, their 11-month-old son Nicholas, and Ginger's brother Tony West were driving a Ford Focus from Supply, North Carolina to their home in Virginia Beach, Virginia. The family stopped for a break at a CVS pharmacy in Greenville, North Carolina, the halfway point of their trip. While Tony and Jeremy went inside the store to purchase snacks and drinks, Ginger remained outside to change Nicholas' diaper in the car.

Ginger had the back passenger side door open and was bending over changing Nicholas' diaper, when defendant approached and pushed her into the back seat. Defendant followed her into the car and made her crawl up to the front passenger side, while he crawled

up to the driver's seat. Defendant then backed the car out of the CVS parking lot and drove away with Ginger and Nicholas. A postal worker who was passing through the CVS parking lot witnessed these events and immediately called the police on his cell phone. Jeremy and Tony meanwhile came out of the store and also contacted the police when they realized that Ginger, Nicholas, and the car were missing.

Approximately an hour later, a surveillance camera at a Food Lion grocery store in Rocky Mount, North Carolina filmed defendant and Ginger purchasing batteries and withdrawing $100.00 in cash with Ginger's debit card. The video captured defendant standing directly behind Ginger and whispering in her ear as she was completing the transaction at the register.

Less than an hour later, defendant appeared at a friend's house in Nashville, North Carolina, driving the red Focus. Ginger and Nicholas were not with him. Defendant bragged about jewelry he had recently gotten, including a gold chain, a bracelet, and rings. He told his friends he had met a girl from Virginia.

That evening, approximately eight hours after defendant had forced Ginger into the car at the CVS, C.D. Thompson of Nashville was walking his dog Charlie through a deserted field about a half mile from his house. Charlie alerted to something in the tall grass, and Mr. Thompson, thinking the dog had found a snake, went to investigate. He found Nicholas lying face down in briars and honeysuckle. The baby, who was wearing nothing but a diaper, was sunburned and surrounded by flies. Approximately 50 feet away, Mr. Thompson saw Ginger lying on the ground. Neither Nicholas nor Ginger were moving or making any noise, and Mr. Thompson thought they were both dead.

Mr. Thompson returned home and called 911. The police arrived shortly thereafter, and as investigators approached the scene, Nicholas lifted his head. He was transported to the hospital still alive, where he was treated for first and second degree sunburn, scratches, and dehydration. A pediatric critical care expert testified that Nicholas' injuries, especially the sunburns, were life-threatening and that if he had not been found before nightfall he could have died as a result of exposure and dehydration.

Ginger was not alive when investigators reached her. An autopsy revealed that she had been raped and strangled and had

STATE v. EDWARDS

[174 N.C. App. 490 (2005)]

suffered a broken neck and a skull fracture as the result of at least four heavy blows to the head. Her head, back, and shoulders bore rust-colored, circular marks, which were later determined to have come from an old tire rim that had been deposited in the field near her body. A forensic pathologist testified that Ginger died of head and neck trauma.

Defendant was arrested the same day. At the time of his arrest, he was in possession of Ginger's jewelry and some cocaine. He was charged with first degree murder, attempted first degree murder, three counts of armed robbery, two counts of first degree kidnapping, first degree rape, possession of cocaine, and unauthorized use of a motor vehicle. He was tried capitally and convicted of all charges, except that instead of three counts of armed robbery, he was convicted of one count of armed robbery for the jewelry he took from Ginger and two counts of common law robbery for the $100.00 withdrawn from the ATM and for the Ford Focus. Following a capital sentencing proceeding, the jury was unable to agree on a recommendation as to punishment, and on 26 March 2004, defendant received a sentence of life in prison without parole for his first degree murder conviction, as well as various other consecutive aggravated sentences for his other nine convictions.

I

[1] Defendant's first argument on appeal is that the trial court committed prejudicial error in denying portions of his written motion for production of evidence. Specifically, defendant contends he was entitled to receive from the State a copy of the laboratory protocols related to any DNA test results that would be presented at trial. The State argued at the motion hearing that defendant was not entitled to these protocols because "[the defense] can get that from the person that testifies. I don't know why that makes any matter at all before— for their individual to look at." The trial court subsequently denied defendant's motion for production with respect to the protocols.

N.C. Gen. Stat. § 15A-903(e) (2003), *repealed by* 2004 N.C. Sess. Laws 154 § 4, at 517-20, which was in effect at the time of defendant's trial, provides:

Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in

connection with the case, or copies thereof, within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor. In addition, upon motion of a defendant, the court must order the prosecutor to permit the defendant to inspect, examine, and test, subject to appropriate safeguards, any physical evidence, or a sample of it, available to the prosecutor if the State intends to offer the evidence, or tests or experiments made in connection with the evidence, as an exhibit or evidence in the case.

This Court has held that "Section 15A-903(e) must be construed as entitling a criminal defendant to pretrial discovery of not only conclusory laboratory reports, but also of any tests performed or procedures utilized by chemists to reach such conclusions." *State v. Cunningham*, 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992). "This information is necessary for the defendant to understand the testing procedure and to conduct an effective cross-examination of the State's expert witness." *State v. Fair*, 164 N.C. App. 770, 774, 596 S.E.2d 871, 873 (2004) (granting a new trial after a trial court erred in not requiring the State to provide discovery of data collection procedures because the requested information constituted laboratory protocols). Based on this Court's prior interpretations of N.C. Gen. Stat. § 15A-903(e), the State concedes, and we are compelled to hold, that the trial court erred in denying defendant access to the protocols that he requested before his trial.

Defendant has, however, failed to demonstrate sufficient prejudice from this error. It is not entirely clear whether this Court should apply a harmless error analysis under N.C. Gen. Stat. § 15A-1443(a) (2003) or whether the State is required to prove harmless error beyond a reasonable doubt under § 15A-1443(b). *See Cunningham*, 108 N.C. App. at 196-97, 423 S.E.2d at 809 (applying the harmless beyond a reasonable doubt standard when the State improperly failed to produce an SBI laboratory report). We need not resolve this question since we have concluded that the error was harmless beyond a reasonable doubt.

Here, defendant argues that the DNA evidence was the only evidence offered by the State to support the charge of first degree rape. He has overlooked the fact that defendant's trial counsel asserted in his opening statement that "[t]he facts of what happened in this case are not in dispute" and that defendant "accepts responsibility for what happened on that day." Throughout the trial, the defense fo-

cused on defendant's mental state and not on whether defendant was in fact the perpetrator of the crimes, including the rape. Indeed, defendant conducted no cross-examination at all of the State's DNA expert. In short, the DNA testing became, in effect, immaterial to the trial because of defendant's choice of defense. Any error regarding production of the protocols was, therefore, harmless beyond a reasonable doubt. *Cf. State v. Thompson*, 110 N.C. App. 217, 225, 429 S.E.2d 590, 595 (1993) (court's failure to allow defendant's fingerprint expert to testify was harmless error when the prosecution did not need to use the fingerprints to link defendant to the crime).

## II

**[2]** Defendant next argues that the trial court erred by excluding testimony of defendant's psychiatrist, Dr. James Hilkey, concerning conversations that the psychiatrist had with defendant. Defendant contends that since these conversations formed the basis for Dr. Hilkey's expert opinion as to defendant's mental state at the time of the crimes, they should have been admissible at trial under N.C.R. Evid. 705.

Rule 705 provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination. There shall be no requirement that expert testimony be in response to a hypothetical question.

According to the official commentary, N.C.R. Evid. 705 is designed to allow an "expert to give his opinion without prior disclosure of the underlying facts unless an adverse party requests otherwise." N.C. Gen. Stat. § 8C-1, Rule 705 cmt. (2003). It is well-established, however, that " 'Rule 705 does not . . . make the bases for an expert's opinion automatically admissible.' . . . 'Only if an adverse party requests disclosure must the trial court require the expert to disclose the underlying facts of his opinion.' " *State v. Workman*, 344 N.C. 482, 495, 476 S.E.2d 301, 308 (1996) (quoting *State v. Baldwin*, 330 N.C. 446, 456, 412 S.E.2d 31, 37 (1992)). *See also Baldwin*, 330 N.C. at 456-57, 412 S.E.2d at 37-38 (holding that the trial court's decision to

exclude defendant's hearsay statements, which defendant contended should have been admitted under Rule 705, was not an abuse of discretion); *State v. Ballard,* 127 N.C. App. 316, 320-21, 489 S.E.2d 454, 457 (1997) (same), *rev'd on other grounds,* 349 N.C. 286, 507 S.E.2d 38 (1998).

Here, because the State did not choose to explore the basis for Dr. Hilkey's opinion, the trial court was not obligated to allow the expert to testify as to statements that formed the basis for this opinion. The only statements that defendant contends should have been admitted are (1) a statement of remorse and (2) a statement that defendant claimed to have little memory of the events at issue. Since defendant's remorse was not relevant to his ability to premeditate and deliberate, and since the trial court allowed Dr. Hilkey to testify extensively regarding his opinion and what he relied upon, excluding only the actual words used by defendant, we can perceive no abuse of discretion. *See State v. Bullard,* 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984) (holding that the trial court is "afforded wide latitude of discretion when making a determination about the admissibility of expert testimony").

## III

**[3]** Defendant's final argument on appeal is that the trial court erred in denying defendant's motion to dismiss the charge of attempted murder of Nicholas. He contends that the State failed to present sufficient evidence that defendant had the requisite intent to kill, as Nicholas' death was not a foregone conclusion at the time defendant abandoned him in the field. In so arguing, defendant is incorrectly viewing the evidence in the light most favorable to him rather than to the State.

When considering a motion to dismiss based on the insufficiency of the evidence, the trial court must determine whether the State has presented substantial evidence of every essential element of the crime and that the defendant was the perpetrator. *State v. Robinson,* 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied,* 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Matias,* 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Brown,* 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). The court must view the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,*

339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied,* 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

Because "[t]he crime of attempt requires an act done with the specific intent to commit the underlying offense," one must specifically intend to kill in order to commit the crime of attempted first degree murder. *State v. Coble,* 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000). Rather than simply showing that the defendant committed an intentional act that could have resulted in death, the State "must show that the defendant intended for his action to result in the victim's death." *State v. Keel,* 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992). " 'An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred.' " *State v. Alexander,* 337 N.C. 182, 188, 446 S.E.2d 83, 86-87 (1994) (quoting *State v. Ferguson,* 261 N.C. 558, 561, 135 S.E.2d 626, 629 (1964)). " '[T]he nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred.' " *Id.* (quoting *State v. White,* 307 N.C. 42, 49, 296 S.E.2d 267, 271 (1982)). "Moreover, an assailant 'must be held to intend the natural consequences of his deliberate act.' " *State v. Grigsby,* 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (quoting *State v. Jones,* 18 N.C. App. 531, 534, 197 S.E.2d 268, 270, *cert. denied,* 283 N.C. 756, 198 S.E.2d 726 (1973)).

After reviewing the record, we hold that the State presented sufficient evidence to allow a reasonable juror to find that defendant possessed the specific intent to kill Nicholas. The evidence, considered in the light most favorable to the State, shows that defendant took the 11-month-old, who was too young to walk, with his mother to a deserted area, where defendant beat the mother to death before driving off, leaving the child in a field with weeds and grass a foot high, wearing only a diaper and with most of his body exposed to the hot midsummer sun. Since defendant had lived in an abandoned house not far from this field, he was familiar with the area, which was a quarter mile from the road and not easily accessible by vehicle. A jury could reasonably conclude from these facts that defendant knew—indeed, intended—that no one would discover Ginger and the child for a long time. Further, this evidence is sufficient for a jury to decide that defendant would not expect a child of this age to survive in this remote location, but rather would expect that—but for the fortuitous arrival of the dog Charlie and

Mr. Thompson—the child would starve, die of dehydration and/or exposure, or suffer from such effects of nature as insects and wild animals before anyone found him.

Since the death of Nicholas would have been a natural consequence of the deliberate acts of defendant, a jury could infer that defendant intended that consequence. Therefore, we hold that the State presented sufficient evidence of defendant's specific intent to kill the child. *See State v. Evangelista*, 319 N.C. 152, 158-59, 353 S.E.2d 375, 380-81 (1987) (upholding denial of motion to dismiss when there was "sufficient evidence from which a reasonable mind might conclude that the defendant had the requisite specific intent to kill," where defendant barricaded himself in a railroad compartment with the children he had kidnapped, and refused all offers of food, water, and other nourishment for the children, ultimately resulting in one infant's death from malnourishment); *see also State v. Brewer*, 328 N.C. 515, 402 S.E.2d 380 (1991) (finding sufficient evidence of specific intent to kill where defendant centered her car, containing her 16-year-old handicapped child in the front seat, on train tracks, and then exited the vehicle immediately before a train struck the car). The trial court, therefore, properly denied defendant's motion to dismiss with respect to the attempted murder charge.

**[4]** Since defendant has not chosen to argue his other assignments of error on appeal, they are deemed abandoned under N.C.R. App. P. 28(a).

No error.

Chief Judge MARTIN and Judge BRYANT concur.